UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-99-KKC

BELINDA H. HALL,                                                                                          PLAINTIFF

v.                                            **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                                   DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the parties' Cross Motions for Summary Judgment. For the reasons stated below, the Court hereby orders the Plaintiff's Motion for Summary Judgment **DENIED** and the Defendant's Motion for Summary Judgment **GRANTED**.

**I.      Factual and Procedural Background**

Plaintiff Belinda H. Hall alleges that she is disabled within the meaning of the Social Security Act, with a disability onset date, as amended, of February 18, 2004. Hall states that she has historically been diagnosed with severe left hip and low back pain, as well as osteoarthritis, hypothyroidism, depression, anxiety, and post traumatic stress disorder [hereinafter "PTSD"]. Plaintiff's Motion for Summary Judgment, at 6. On February 18, 2004, Hall filed a claim for supplemental social security income. Her claim was initially denied on July 14, 2004, and again upon reconsideration on May 19, 2005. On June 5, 2006, Hall's claim was heard before an Administrative Law Judge [hereinafter "ALJ"] in Hazard, Kentucky.

Hall claims that she has a variety of physical and mental ailments, and has received treatment and examinations from a number of clinics and medical professionals. In 2003, Hall underwent radioactive treatment for a thyroid problem; she must take synthroid for the remainder of her life. ALJ's Opinion, at 3. Hall's physical problems consist of arthritic pain in her shoulders, hands, wrists, lower back, legs, and the bottoms of her feet. *Id.* She describes the intensity of the pain as always 7 or 8 on a scale of 1 to 10.

*Id.* She states that she can only stand and walk, or sit in one place, for about 10 to 15 minutes before she must rest or shift position. *Id.* She also experiences migraine headaches, tremors, and fatigue. *Id.* Hall's psychological problems consist of daily panic attacks, nightmares, PTSD, and depression. *Id.* She claims that she lacks the interest to do anything, does not like to leave her home, experiences crying spells, and is unable to do a full range of household chores. *Id.*

Hall has been a patient at Daniel Boone Clinic since December 2003, where she was treated by Dr. Vahid Mehrpouyan and nurse practitioner Alicia Cook. Plaintiff's Motion for Summary Judgment, at 3-4. On several occasions in his treatment notes, Dr. Mehrpouyan opined that Hall suffered from arthritis of the left hip and knee, severe or chronic left hip and low back pain, and anxiety neurosis. *Id.* Dr. Mehrpouyan also opined that Hall suffered from panic attacks, hypothyroidism, and headaches. *Id.* On several occasions, Dr. Mehrpouyan also opined that Hall had a limitation of range of motion of her left hip. *Id.* at 3. On these various occasions, Dr. Mehrpouyan prescribed Hall Xanax, Ultracet, Synthroid, Alprazolam, and Fioricet. *Id.* at 3-4.

Hall attended Mountain Comprehensive Health Corporation from October 1995 to March 2005. *Id.* at 3. During this time, Dr. Van S. Breeding opined that Hall suffered from hypothyroidism, chronic arthritic-type pain in the back, and chronic depression with anxiety. *Id.* Hall was also treated at Kentucky River Community Care since July 5, 2005. The treatment record from Kentucky River Community Care stated that Hall's memory, insight, and judgment were unremarkable, that she exhibited average intelligence, and that there was no evidence of perceptual disturbance. ALJ's Opinion, at 5. This record also reported, however, that Hall was anxious and had PTSD. *Id.* On July 19, 2005, nurse practitioner Priscilla Mullins also opined that Hall suffered from PTSD and hypothyroidism. Plaintiff's Motion for Summary Judgment, at 4.

Hall was seen by consultative psychologist Dr. William Rigby on March 29, 2005. Dr. Rigby noted that Hall's hands trembled and that she appeared significantly anxious during her consultation. Dr. Rigby opined that Hall has a good ability to understand, retain, and follow instructions, as well as a good

ability to sustain attention to perform simple repetitive tasks. Transcript, at 233. Dr. Rigby also noted that Hall "appears to have fair ability to relate to others including fellow workers and supervisors and fair ability to tolerate stress and pressures of work activity." *Id.* Dr. Rigby noted that Hall's affect was restricted, but that her thought process was free of psychotic symptoms and her speech was normal. ALJ's Opinion, at 5.

Nurse practitioner Cook opined that Hall suffered from chronic low back pain, chronic headache, anxiety, and osteoarthritis. Plaintiff's Motion for Summary Judgment, at 4. On May 25, 2006, Cook issued a medical source statement presenting her opinion that Hall had a limited range of motion in the joints due to osteoarthritis, particularly in the shoulders, feet, and ankles. *Id.* at 4-5. Cook also opined that Hall could lift and carry less than ten pounds and stand and walk less than two hours in an eight-hour workday. *Id.* at 5. Cook further opined that Hall could not climb, kneel, crouch, crawl, or stoop. *Id.* However, Cook did not order any x-rays done on Hall, and her treatment record does not indicate that she reviewed any of Hall's prior x-rays. ALJ's Opinion, at 4.

Cook also issued another medical source statement regarding Hall's mental health on May 25, 2006. In it, Cook stated that Hall had no ability to deal with or use judgment with the public, interact with her supervisors, deal with work stresses, function independently, maintain attention or concentration, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. Plaintiff's Motion for Summary Judgment, at 5. Cook also stated that Hall had a limited ability to hear and speak; however, Cook's treatment progress notes indicated that Hall's speech was clear, precise, and appropriate. ALJ's Opinion, at 4. Further, the ALJ observed Hall at her hearing and found that she appeared to understand normal conversation without limitation. *Id.*

Consultative examiner Dr. Mark V. Burns reported that Hall's shoulders, elbow, wrists, and cervical spine showed no physical limitations; x-rays of Hall's cervical spine were also normal. *Id.* Dr. Burns also found that Hall's physical and orthopedic exam was within normal limits and that she had no physical restrictions. *Id.* A CT scan of Hall's head was normal. *Id.*

Hall is able to read, write, and take care of her personal needs. *Id.* Hall lives with her mother, and though her mother cooks, cleans, shops, and does household chores, Hall is also able to go shopping, cook, and wash dishes. *Id.* Hall has been on a 40 to 50 mile trip, and she obtained the assistance of a neighbor to bring her to her ALJ hearing. *Id.* at 5.

On August 18, 2006, the ALJ issued an opinion denying Hall's claim for supplemental social security income. The ALJ found that Hall had the severe impairments of PTSD, anxiety disorder, and dysthymia, but that these do not meet or medically equal one of the listed impairments in 20 C.F.R. § 416.920(d), 416.925, and 416.926. *Id.* at 3-5. The ALJ found that Hall retains the residual functional capacity to perform non-detailed tasks involving little interaction with the general public, and that she has no exertional restrictions. *Id.* at 5. The ALJ also rejected the opinion of nurse practitioner Cook as inconsistent with her own treatment record, as well as those of Kentucky River Community Care, Dr. Rigby, and Dr. Burns. *Id.* at 4-5. With the help of a vocational expert's testimony, the ALJ finally determined that there are jobs that exist in significant numbers in the national economy that Hall can perform, such as bench assembler or sorter/packer. *Id.* at 6. Thus, the ALJ found that Hall was not under a disability as defined by the Social Security Act, and her claim for supplemental social security income was accordingly denied. *Id.* at 7. On March 6, 2007, the Social Security Administration's Appeals Council denied Hall's request for review, and adopted the ALJ's opinion as its own. Hall than brought the present action in this Court. She makes two arguments: first, that the ALJ erred by improperly determining Hall's residual functional capacity; and second, that the ALJ erred by failing to find that Hal suffers from severe exertional impairments.

## II.     Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted).

Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III.    Analysis**

**A.    The ALJ Properly Determined Hall's Residual Functional Capacity**

The ALJ determined that Hall retains the residual functional capacity to perform non-detailed tasks involving little interaction with the general public. ALJ's Opinion, at 5. In making this determination, the ALJ also found that Hall has no exertional restrictions. *Id.* Hall argues that this determination of her residual functional capacity is unsupported by the substantial evidence of record, meriting either a reversal of the ALJ's decision or a remand for further consideration.

Residual functional capacity is the most that a claimant can still do in a work setting despite any physical or mental limitations that the claimant has. 20 C.F.R. § 416.945(a). It is the responsibility of the ALJ to determine this residual functional capacity. *Id.* § 416.946(d). The ALJ is to make this determination "based on all of the relevant medical and other evidence." *Id.* § 416.945(a)(3). The ALJ is also to consider "any statements about what you [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations," as well as "descriptions and observations of your limitations from your impairment(s), including limitations that result from your

5

symptoms, such as pain . . . ." *Id.* All of the claimant's impairments are to be considered in determining the residual functional capacity, including those that are not found to be "severe" within the meaning of the Social Security Act. *Id.* §§ 416.945(a)(2), 416.945(e). In addition, all of the claimant's symptoms, including pain, are considered in determining the claimant's residual functional capacity and disability, to the extent that these symptoms "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." *Id.* § 416.929(a).

When considering the medical and other evidence of record for the residual functional capacity determination, the ALJ is directed to place varying amounts of weight on the medical evidence, which may take the form of medical opinions, depending on the type of medical source the evidence comes from. Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(a)(2). Medical sources refer to three different types of sources that provide evidence about a claimant's impairments: treating sources, nontreating sources, and nonexamining sources. *Id.* § 404.1502. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. *Id.* A nontreating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. *Id.* A nonexamining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

The ALJ must evaluate every medical opinion he receives, regardless of the type of medical source it comes from. *Id.* § 404.1527(d). More weight is to be given to opinions of treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." *Id.* § 404.1527(d)(2). The ALJ must give an opinion of a treating source

controlling weight in his disability determination if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record.  *Id.*  If the treating opinion is not given controlling weight, it must be evaluated according to other factors, such as length, nature, and extent of the treatment relationship; frequency of the examination; supportability; consistency; specialization of the source; and any other factors brought to the ALJ's attention.  *Id.* § 404.1527(2)-(6).  These same factors are also used to determine the weight of nontreating and nonexamining sources.

The evidence of record provided substantial evidence for the ALJ to reach his conclusions regarding Hall's residual functional capacity.  The ALJ explained that, although he concluded from the evidence that Hall had PTSD, anxiety disorder, and dysthymia, and that these psychological limitations were severe, they were not severe enough to meet or equal one of the listed impairments in the Code of Federal Regulations.  ALJ's Opinion, at 4, 5.  The ALJ discussed the medical opinion of nurse practitioner Cook, in which Cook opined that Hall was unable to deal with the general public, interact with her supervisors, behave properly, use independent judgment, or deal with work stresses.  *Id.* at 5.  The ALJ compared this opinion to the treatment record of Kentucky River Community Care, which found Hall's judgment, insight, and memory to be unremarkable, and that there was no evidence of perceptual disturbance.  *Id.*  Cook's opinion was also compared to Dr. Rigby's findings, which described Hall as having a good ability to sustain her attention and perform simple tasks, and having a fair ability to relate to co-workers and supervisors and to tolerate work stress.  *Id.*  Dr. Rigby also noted that Hall's thought process was free of psychotic symptoms and that speech was normal.  *Id.*  The ALJ also noted that Hall lives peaceably with her mother and was brought to her hearing by her neighbor, indicating that she can cooperate with other people, that she read and write, and that she has no difficulty taking care of her personal needs.

The ALJ rejected Cook's opinion, finding it inconsistent with Cook's own treatment notes, with those of Kentucky River Community Care and of Dr. Rigby, and with Hall's statements about her own

abilities.  These are sufficient reasons under the Social Security regulations for not according a medical opinion controlling status.  *See* 20 C.F.R. § 404.1527(d)(2) (medical opinions are only entitled to controlling weight if they are not inconsistent with other substantial evidence in the record).  Moreover, since the ALJ's conclusions clearly attack both the supportability and the consistency of Cook's opinion, factors for consideration in determining the weight to give medical opinions when they are not given controlling status, the ALJ was merited in rejecting Cook's opinion.  *See id.* §§ 404.1527(d)(3)-(4).  Additionally, the ALJ noted that "Ms. Cook is not an acceptable medical source."  ALJ's Opinion, at 5.  A medical opinion, such as Cook's, is only entitled to heightened consideration if it is from an "acceptable medical source."  20 C.F.R. § 404.1527(a)(2).  "Acceptable medical source" is defined to include: licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  *Id.* § 404.1513(a)(1)-(5).  Since Cook is a nurse practitioner, which is not included in the list, the ALJ correctly rejected Cook's opinion for this additional reason.

       The remainder of the record evidence regarding Hall's psychological state supports the ALJ's conclusions that Hall retains the residual functional capacity to perform non-detailed tasks involving little interaction with the general public.  As noted, Dr. Rigby found that Hall could maintain attention, work with others, and tolerate stress at work.  ALJ's Opinion, at 5.  This is despite the fact that Dr. Rigby concurred with Cook that Hall had PTSD, anxiety disorder, and dysthymia.  *Id.* at 4.  The treatment record from Kentucky River Community Care further reveals that Hall was anxious and was diagnosed with PTSD, *id.*, but there is nothing in this record undermining the ALJ's conclusion that she can perform work despite this diagnosis.  Substantial evidence supports the residual functional capacity assessment regarding Hall's psychological limitations.

       Substantial evidence also supports the residual functional capacity assessment with respect to Hall's physical limitations.  The ALJ found that Hall has neither severe physical impairments nor exertional limitations.  *Id.* at 4, 5.  Hall principally relies on the medical opinion by Cook, which also

8

addressed Hall's physical impairments. Cook's opinion stated that Hall has a limited range of motion in her joints, that she can lift and carry less than ten pounds, and that she can stand and walk for less than two hours in a standard workday. *Id.* at 4. Cook also stated in this opinion that Hall is unable to climb, kneel, crouch, crawl, or stoop. *Id.*

As with Cook's psychological assessment, the ALJ rejected Cook's physical assessment as inconsistent with the other evidence of record and with Cook's own treatment record, and thus, not supported by objective evidence. *Id.* Along these lines, the ALJ noted that Cook had not reviewed Hall's x-rays or ordered any additional x-rays performed. *Id.* Cook stated that Hall had a limited ability to hear and speak, but Cook's progress notes stated that Hall's speech was clear and appropriate, and did not indicate any hearing problems. *Id.* Moreover, the ALJ observed Hall at her hearing, where she did not appear to exhibit any hearing problems. *Id.* The ALJ also compared Cook's opinion with the treatment record of Dr. Burns, who reported that Hall's shoulders, elbow, wrist, and cervical spine showed no limitations. *Id.* Dr. Burns further found that Hall's physical and orthopedic exam was within normal limits and that Hall had no physical restrictions, contrary to what Cook found. *Id.* The ALJ's decision to give Cook's physical assessment opinion no weight in his decision is appropriate for the same reasons that his rejection of the mental assessment opinion was appropriate.

It is also clear that the ALJ took Hall's reports of her pain into account in making his determination of her residual functional capacity, as directed by the Social Security Regulations. *See* 20 C.F.R. § 46.945(e). The ALJ noted that Hall complained of pain in her shoulders, hands, wrists, lower back, legs, and the bottoms of her feet due to arthritis, and that she complained of headaches. ALJ's Opinion, at 4. However, the ALJ also cited evidence indicating that x-rays of Hall's cervical spine were normal, as were CT scans of her head. *Id.* Importantly, the ALJ also determined that although Hall's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," he found that Hall's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 5-6. Thus, the ALJ made a credibility determination concerning Hall's

statements about the extent of her pain.  Such credibility determinations cannot be reevaluated by a reviewing court.  *See Nelson*, 195 Fed. Appx. at 468; *Garner*, 745 F.2d at 387.  The evidence of record, as well as the ALJ's credibility determination, provided substantial evidence for Hall's residual functional capacity assessment.

Hall has also referred to the treatment notes of Dr. Mehrpouyan, citing statements from these notes for her claim that substantial evidence does not support Hall's residual functional capacity determination.  At several times in these notes, Dr. Mehrpouyan states that Hall suffered from arthritis of the left hip and knee, severe or chronic left hip and low back pain, anxiety neurosis, panic attacks, hypothyroidism, and headaches.  Plaintiff's Motion for Summary Judgment, at 6-8.  Dr. Mehrpouyan also stated several times in these notes that Hall had a limitation of range of motion of her left hip.  *Id.*  The transcript record does not appear to contain a medical opinion from Dr. Mehrpouyan, only these treatment notes.  *See* Transcript, at 263-82.  Though these treatment notes do present evidence against the ALJ's determination of Hall's residual functional capacity, indicating that Hall does perhaps have some exertional restrictions, this is no reason to reverse or remand the ALJ's decision.  As long as there is substantial evidence to support the ALJ's decision, that decision must be upheld, even if there is substantial evidence in the record to support the opposite outcome.  *See Jones*, 336 F.3d at 475 (quoting *Key*, 109 F.3d at 273).  The ALJ did not err in determining Hall's residual functional capacity.

**2.     The ALJ Properly Found that Hall Does Not Suffer from Severe Exertional Impairments**

As noted above, the ALJ found that Hall suffers from the severe psychological impairments of PTSD, anxiety disorder, and dysthymia.  ALJ's Opinion, at 3.  The ALJ did not find that Hall suffered from any severe physical impairments; in fact, the ALJ concluded that Hall had no exertional impairments.  *Id.* at 4.  Hall claims that this determination is unsupported by substantial evidence in the record.  The Court disagrees.

A "severe" impairment is an impairment or combination of impairments which significantly limit a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work

activities" are the abilities and aptitudes necessary to do most jobs. *Id.* § 404.1521(b). These include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *Id.* Moreover, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Hall puts forth evidence from Dr. Breeding, Dr. Mehrpouyan, and nurse practitioner Cook to support her contention that she does indeed have severe physical impairments. Dr. Breeding opined on June 9, 2004 that Hall suffered from chronic arthritic-type pain in her back. Plaintiff's Motion for Summary Judgment, at 10. As discussed earlier, Dr. Mehrpouyan stated several times in his treatment notes that Hall had low back pain, left hip pain, osteoarthritis, and a limitation of range of motion in her left hip. *Id.* Finally, Hall relies on the medical opinion issued by Cook relating to Hall's physical limitations, which was discussed in detail earlier in this opinion. *Id.* at 10-11.

As noted, however, the ALJ rejected Cook's opinion concerning Hall's physical limitations, finding it unsupported by objective evidence and inconsistent with the other record evidence. This Court held that it was proper for the ALJ to reject Cook's opinion; as such, the opinion's conclusions do not undermine the ALJ's determination that Hall has no severe physical impairments. Dr. Breeding and Dr. Mehrpouyan's statements do provide evidence to support Hall's contention that she has severe physical impairments. However, as the government pointed out in its own motion for summary judgment, "[t]he mere diagnosis [of a medical condition], of course, says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863. The fact that Dr. Breeding and Dr. Mehrpouyan have stated that Hall suffers from pain and tenderness in parts of her body does not, by itself, address the issue of whether this constitutes a "severe" physical impairment. Moreover, since there is also substantial evidence to support the ALJ's conclusion to the contrary, the Court must uphold the ALJ's decision regardless of the amount of evidence in favor of Hall's contention. *See Jones*, 336 F.3d at 475 (quoting *Key*, 109 F.3d at 273).

As noted, Dr. Burns' treatment record reported that Hall's shoulders, elbow, wrist, and cervical

spine showed no limitations. ALJ's Opinion, at 4. Dr. Burns found that Hall's physical and orthopedic exam was within normal limits and that Hall had no physical restrictions. *Id.* Hall's CT scans were also normal. *Id.* X-rays of Hall's cervical spine also appeared normal. *Id.* Further, the ALJ noted that despite Hall's claimed physical exertional restrictions, she has been on a 40 to 50 mile trip, goes grocery shopping, and is able to take care of herself around the house. *Id.* Finally, the ALJ explicitly found Hall's statements about the disabling extent of her pain to not be credible. *Id.* at 5-6. This credibility determination cannot be reevaluated by this Court. *See Nelson*, 195 Fed. Appx. at 468; *Garner*, 745 F.2d at 387. Substantial evidence supports the ALJ's determination that Hall suffers from no severe exertional impairments.

**WHEREFORE,** For the reasons stated above,

1. The Plaintiff's Motion for Summary Judgment is DENIED; and
2. The Defendant's Motion for Summary Judgment is GRANTED.

Dated this 19th day of November, 2007.

**Signed By:**

*Karen K. Caldwell* KKC

**United States District Judge**